UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION
_____

| | |
|---|---|
| **Dr. Robert J. Roswick,** | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY TRIAL DEMAND** |
| **Mid Dakota Clinic, P.C.; Board of Directors, Mid Dakota Clinic, P.C.; Dr. Robert Tanous; Dr. Shelly Seifert; Dr. Andy Hetland; Dr. John Botsford; Dr. Vijay Rao; Dr. Brian Hebert; and Marvin Lein.** | |
| Defendants. | |

_____

# INTRODUCTION

1. Dr. Roswick took a courageous stand against racial discrimination at Mid Dakota Clinic. When the Clinic's leadership made a decision to discriminate against an Indian-American physician, Dr. Roswick refused to remain silent: he emailed several of his colleagues and told them that the Clinic's actions were discriminatory and wrong. The Clinic responded immediately by suspending and terminating his employment. At the shareholder meeting to terminate Dr. Roswick's employment, Clinic leadership knowingly presented false information about Dr. Roswick to his

fellow shareholders, and conceded that they sought his termination because of his allegations of discrimination. Defendants violated both the plain prohibition of Title VII against retaliation as well as their fiduciary duties toward a fellow shareholder. Dr. Roswick now seeks relief for Defendants' conduct.

## JURISDICTION AND VENUE

2. Dr. Roswick bases his claims, in part, on Title VII of the Civil Rights Act of 1964. Thus, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental subject matter jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants because they reside and do business in North Dakota, with their principal place of business in Bismarck.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Dr. Roswick's claims occurred in this judicial district.

5. The EEOC issued a right to sue letter on December 12, 2016.

## PARTIES

6. Dr. Roswick practiced as a Family Practice Physician at Mid Dakota Clinic ("Clinic") from September 2001 to April 2016. He was an "employee" of the Clinic as defined by Title VII. He earned shareholder status in 2003.

7. Mid Dakota Clinic is a North Dakota corporation with its principal office in Bismarck. The Clinic was Dr. Roswick's "employer" as defined by Title VII. The Clinic is not a publicly held corporation.

8. The Clinic's Board of Directors ("Board") manages the property, affairs, and business of the Clinic. The Board sets the rules and regulations of physicians' work and holds sole power to suspend physicians from employment and call special meetings of shareholders for the purpose of terminating the employment of shareholders. Board members and department chairs supervise physicians' work and compliance with Board rules and regulations.

9. Dr. Seifert served as President of the Board, which made operative decisions regarding Dr. Roswick's employment, including the decisions to suspend his employment and recommend termination. Dr. Tanous served as the Clinic's Medical Director and made operative decisions regarding Dr. Roswick's employment, including the decisions to suspend his employment and

recommend termination. Both operated as agents of the Clinic. They were also fellow shareholders with Dr. Roswick in the Clinic.

10. Drs. Hetland, Botsford, Rao, and Hebert served on the Board. They made operative decisions regarding Dr. Roswick's employment, including the decisions to suspend his employment and recommend termination. They acted as agents for the Clinic.

11. Marvin Lein acted as the Clinic's CEO – he also operated as an agent for the Clinic and qualifies as an "officer" under N.D.C.C. § 10-19.1. He also participated in operative decisions regarding Dr. Roswick's employment, including the decisions to suspend him and recommend termination.

## FACTS

### *Defendants disapproved of Dr. Roswick's attempts to influence Clinic policies.*

12. As a practical matter, the Board and Medical Director enjoyed total control over the rules, regulations, and operations of the Clinic. The Board crafted and enforced policies on nearly all aspects of physician practice.

13. Dr. Roswick served as Chairman of the Board from 2006 until 2013. During his tenure, he aggressively policed misconduct amongst physicians: he disciplined physicians for sexual misconduct, professional incompetence, and abusive behavior. In so doing, he angered several physicians, who worked with disciplined physicians to unseat Dr. Roswick from the Board.

14. Though Dr. Roswick lost his position and title, he still tried to use his experience and insight to thoughtfully aid Board members in creating and implementing Clinic rules and regulations, as well as ensuring professional and ethical integrity throughout the Clinic.  Board members did not appreciate his efforts: they viewed it as insubordinate and disrespectful for a rank and file shareholder – and Dr. Roswick in particular – to attempt to influence Clinic rules and regulations.

### *Defendants disciplined Dr. Roswick for conduct that they knew he had not committed.*

15. Dr. Roswick suggested that it was inefficient and unnecessary for the Clinic's electronic health record system to send notification of pending results to all physicians instead of just final results.  Dr. Roswick tried to work with the Clinic's IT support technician to correct the problem.  Dr. Tanous objected to Dr. Roswick's efforts and told him to stop working with IT support on the issue.  Dr. Roswick complied.  Defendants nonetheless disciplined him based on a made-up reason: they claimed that his behavior constituted a refusal to follow Clinic policies when they knew that he in fact had not violated any Clinic policies.  Defendants also disciplined him for somehow violating HIPPA by working with IT support on the issue, though they knew that Dr. Roswick's routine actions did not constitute a violation of HIPPA.

16. On another occasion, a patient told Dr. Roswick that she was uncomfortable with a particular physician that MDC insisted she use for a *fourth* procedure. Dr. Roswick told her that he couldn't advise her to see a doctor that wasn't her choice. Though Dr. Roswick's comments were perfectly appropriate (and necessary given his oath as a physician to his patients), Defendants disciplined him for "inappropriate expression of concerns regarding a physician colleague's competency." In fact, as Defendants knew, Dr. Roswick did not express any concerns regarding a colleague's competency – he simply told his patient that she didn't have to see a physician that she didn't want to.

17. After an MDC physician told Dr. Roswick and several other physicians that Dr. Tanous told him to commit fraudulent billing, Dr. Roswick reported the incident to two Board members by email. Though Dr. Roswick was required to report the conversation – ethically and by the Clinic's own rules – the Defendants nonetheless disciplined him for "making spurious allegations." Defendants knew that Dr. Roswick hadn't made any allegations – let alone spurious allegations – but simply reported the conversation he had with another physician, as he was required to do. Defendants didn't interview any of the other physicians present for the conversation.

18. Clinic leaders even scrutinized Dr. Roswick's patient chart notes. Dr. Roswick noted his inability to properly document the status of notification to a patient regarding results using the Clinic's electronic medical record system. Dr. Tanous sent several emails to Dr. Roswick disagreeing with Dr. Roswick's assessment. Dr. Roswick calmly and timely responded to each inquiry with the objective basis for his conclusions. Defendants responded by disciplining him for "refusal to follow clinic policies," though they knew that he in fact had not violated any Clinic policy.

19. Defendants disciplined Dr. Roswick for other reasons that it completely made up and which had no even tangential connections to fact. They disciplined him for "refusal to follow clinic policies" regarding "reporting complaints or concerns about a physician's care," though Dr. Roswick hadn't reported any complaints or concerns about a physician's care. They gave no further specifics.

20. Defendants disciplined Dr. Roswick for "failure to promptly respond to inquiries from the MD [Dr. Tanous]" when he in fact timely responded to all such inquiries. Defendants gave no further specifics.

21. Defendants disciplined Dr. Roswick for "invoking alleged concerns of a peer that has no basis in fact and without peer's consent." First, Dr.

Roswick had done no such thing. Second, physicians don't need their peer's consent to discuss concerns, as documented in the Clinic's own regulations.

22. Defendants disciplined Dr. Roswick for these various purported offenses without proper and fair investigation and knowing that their allegations lacked factual basis and were not true. In fact, when Dr. Roswick appeared before the Board on October 6, 2014 to discuss these incidents, the Clinic's lawyer instructed all Board members and Defendants to remain silent as he handed a disciplinary letter for "disruptive behavior" to Dr. Roswick for these incidents. Defendants knowingly departed from the industry accepted definition of "disruptive behavior" to create a unique definition that they could use to label Dr. Roswick – though they knowingly used false allegations to fit even their made-up definition.

### *Dr. Roswick opposed racial discrimination at the Clinic.*

23. In November 2014, the Board suspended Dr. Jayaram Bharadwaj ("Dr. Jay"), an Indian-American physician, from his employment. The Board did so after refusing to adopt any of the recommendations of the third-party evaluator that it demanded Dr. Jay see over a three-week period. The Board's refusal to even try any of its evaluator's recommendations and instead manufacture reasons to suspend Dr. Jay was unique to him; when dealing with white physicians in the past, the Board routinely adopted and

8

implemented the recommendations of evaluators that it hired to see its physicians.

24. The Board also decided to terminate Dr. Jay's employment and set a special meeting of shareholders for January 26, 2015 to execute its recommendation. The Board knew that its purported reasons for suspending Dr. Jay and recommending his termination were untrue and pretextual.[1]

25. Five days before the January 26, 2015 special meeting to terminate Dr. Jay, Dr. Roswick sent an email to a list of approximately 20 Clinic physicians. Dr. Roswick's email stated his opposition to the Board's racially discriminatory treatment of Dr. Bharadwaj: "No suspension has ever been handled this way with a white American born doctor. I hope I am not the only one to grasp the gravity of this gaff." The head of surgery forwarded Dr. Roswick's email to Dr. Seifert, Dr. Tanous, and Mr. Lein.

26. After forcing Dr. Jay's resignation on January 26, Defendants turned their efforts to Dr. Roswick. Mr. Lein sent him a letter on February 3 demanding that he meet with the Clinic's attorney. Dr. Roswick consulted with his own attorney, who responded to Lein's letter on February 10 and pointed out that Dr. Roswick was not a lawyer "marshalling facts to prove . . . that the administration was discriminating." Rather, Roswick simply pointed out

---

[1] See Bharadwaj v. Mid Dakota Clinic et al, 16-CV-262 (D. N.D.), Doc. No. 1 at ¶¶ 63-9.

9

that the Clinic's disparate treatment between Dr. Jay and other white physicians was problematic and discriminatory.

27. Mr. Lein responded the next day by stating that Dr. Roswick's allegations were "baseless" and therefore the Board would commence action against him.

28. On February 17, Defendants suspended Dr. Roswick's employment after discussing his concern that it was discriminating against Dr. Jay. Dr. Seifert wrote that the decision was based in part on Dr. Roswick's refusal to meet with the Clinic's attorney. In fact, as she and Defendants knew – that allegation was false: Dr. Roswick did not refuse to meet with the Clinic's attorney.

29. The same day, Dr. Seifert sent Dr. Roswick a letter stating that the Board recommended his termination and decided to call a special meeting of shareholders to execute its decision. "The Board also determined that you were not merely suggesting that others might interpret the Board's actions regarding Dr. Jay as discriminatory, as you claimed, but rather, you actually were asserting discrimination and racism. The actions demonstrate a furtherance of disruptive activity, a history of which you were previously presented and warned against repeating."

30. The Board set Dr. Roswick's termination meeting for April 14. At the meeting, Defendants, through the Clinic's counsel, presented allegations that Dr. Roswick was a "disruptive physician." Defendants knew that the allegations lacked factual basis and were, in fact, untrue; yet, they presented them to shareholders nonetheless and did not inform shareholders that the allegations were false and hadn't even been properly investigated. At Defendants' direction, the Clinic's attorney told shareholders that Dr. Roswick:

- violated HIPPA and disobeyed Dr. Tanous by continuing to work with IT support to address the preliminary lab result issue when, in fact, they knew that Dr. Roswick stopped working with IT support after Dr. Tanous told him to stop;

- refused to amend his medical chart for a patient after Dr. Tanous ordered him to do so when, in fact, they knew that Dr. Tanous did not order Dr. Roswick to amend the medical records;

- improperly reported concerns about a fellow physician when, in fact, they knew that Dr. Roswick did not report such concerns but merely told a patient – in writing – that she may have a physician of her choosing;

- alleged that Dr. Tanous engaged in fraudulent billing practices when, in fact, they knew that Dr. Roswick simply repeated the allegations of another physician to two Board members – *as he was required to do by ethical rules and MDC's own regulations*; and

- refused to meet with the Clinic's attorney regarding his allegations of racial discrimination against Dr. Bharadwaj when, in fact, they knew that Dr. Roswick had not refused to meet.

11

31. Despite knowing that the allegations were false, Defendants did nothing at the meeting. They allowed the false allegations to be presented to shareholders as reasons to terminate Dr. Roswick's employment.

32. At the meeting, a shareholder asked the Board two questions: 1) Did Dr. Roswick's "disruptive" behavior improve after the Board gave him its October 6, 2014 letter?; and 2) if yes, "*is the only reason we're here because of his complaint of discrimination*?" Dr. Seifert answered, "Yes to both."

33. Clinic shareholders have never gone against a Board recommendation for termination – their vote was simply a *pro forma* exercise to ratify Board actions. Dr. Roswick's case was no different. On April 14, the Clinic terminated his employment.

### COUNT 1: TITLE VII RETALIATION (DEFENDANT MDC)

34. Dr. Roswick engaged in statutorily protected activity when he opposed the Clinic's racially discriminatory actions against Dr. Bharadwaj.

35. The Clinic took adverse employment actions against Dr. Roswick because of his protected activity. But for Dr. Roswick's statutorily protected activity, the Clinic would not have suspended and subsequently terminated his employment.

36. Dr. Roswick suffered damages due to the Clinic's retaliation, including: lost wages and benefits, front pay, consequential damages, loss of shareholder

status and benefits, deprivation of appreciation and sale value of his share in the Clinic, emotional distress, attorney fees, and costs.

## COUNT 2: BREACH OF FIDUCIARY DUTY[2] (ALL DEFENDANTS)

37. North Dakota law required Defendants to act in an honest, fair, and reasonable manner toward Dr. Roswick in his capacity as a Clinic shareholder, while always acting in the utmost good-faith and with loyalty to him as a shareholder. Defendants did not meet these high fiduciary standards.

38. Instead, they acted out of avarice, expediency, or self-interest in suspending and discharging Dr. Roswick. In doing so, they acted in a fraudulent, oppressive, and unfairly prejudicial manner toward Dr. Roswick and frustrated his reasonable expectations as a shareholder. Specifically, Defendants manufactured and presented reasons for his discipline, suspension, and termination that they knew were not true. They willfully did not properly investigate their allegations because they knew the allegations were not true.

39. Defendants' behavior failed to meet both their substantive fiduciary obligations of honesty, good-faith, loyalty, fairness, and reasonableness as

---

[2] See generally N.D.C.C. §§ 10-19.1; 10-19.1-115.

well as their procedural fiduciary obligations to avoid unfair and oppressive negotiating tactics.

40. Dr. Roswick had a reasonable expectation of continuing employment, and that his employment would not be suspended or terminated based on knowingly and demonstrably false reasons set forth by Defendants. He had a reasonable expectation of procedural protections for his employment, including that Defendants would present only truthful reasons for termination to shareholders or no reasons at all – but not false reasons – so that shareholders could make an informed decision regarding whether to terminate his employment.

41. Dr. Roswick's employment at the Clinic served as his principal source of income. He planned on spending the entirety of his career at the Clinic. Defendants' breach of their fiduciary duties caused him damages, including lost wages, front pay, deprivation of the appreciation and sale value of his Clinic shares, consequential damages, attorney fees, and costs.[3]

## PRAYER FOR RELIEF

WHEREFORE, Dr. Roswick requests that the Court:

- Find and declare that Defendants violated Title VII's prohibitions on retaliation as described above;

---

[3] See generally Balvik v. Sylvester, 411 N.W.2d 383, 388-9 (N.D. 1987) (suggesting alternative remedies to forced dissolution).

- Find and declare that Defendants breached their fiduciary duties to Dr. Roswick as described above;

- Award Dr. Roswick compensatory damages, including back pay, front pay, emotional distress, consequential damages, and loss of share appreciation damages;

- Award Dr. Roswick punitive damages;

- Award Dr. Roswick special damages, including litigation costs and reasonable attorneys' fees;

- Order injunctive relief, including reinstatement;

- Enjoin Defendants from further violations of Title VII;

- Order dissolution of the Clinic and liquidation of its assets;

- Order the payment of interest as allowed by law; and

- Award such other and further relief as the Court deems equitable and just.

*Dr. Roswick requests trial by jury*.


Dated: March 6, 2017                    **MADIA LAW LLC**


                                        /s/Joshua A. Newville_____
                                        Joshua A. Newville, Admitted to D. N.D.
                                        J. Ashwin Madia*, MN No. 0321187
                                        345 Union Plaza
                                        333 Washington Avenue North
                                        Minneapolis, MN 55401
                                        Telephone: 612.349.2743
                                        Fax: 612.235.3357

Email: joshuanewville@madialaw.com
**ATTORNEY FOR PLAINTIFFS**

*pro hac vice application forthcoming*