# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

Dr. Robert J. Roswick,

                 Plaintiff,

v.

Mid Dakota Clinic, P.C.,

                 Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 17-44 ADM/ARS

_____

J. Ashwin Madia, Esq., Madia Law LLC,, Minneapolis, MN on behalf of Plaintiff.

Scott K. Porsborg, Esq., and Sarah E. Wall, Esq., Smith Porsborg Schweigert Armstrong Moldenhauer & Smith, Bismarck, ND, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for rulings on Plaintiff Dr. Robert J. Roswick's ("Dr. Roswick") Motion for Attorney Fees and Costs [Docket No. 227], Motion to Amend Judgment to Award Equitable Relief [Docket No. 247], Motion to Alter Judgment to Award Interest [Docket No. 251], and Motion for Partial New Trial on Punitive Damages [Docket No. 254]. Also before the Court are Defendant Mid Dakota Clinic, P.C.'s ("MDC") Renewed Motion for Judgment as a Matter of Law [Docket No. 244] and Motion for New Trial, or in the Alternative, Motion for Remittitur [Docket No. 246]. For the reasons set forth below, Dr. Roswick's motions for attorney fees, equitable relief, and interest are granted in part, his motion for a partial new trial is denied, and MDC's motions are denied.

## II. BACKGROUND

On March 7, 2017, Dr. Roswick filed this Title VII retaliation case against his former

employer, MDC. Dr. Roswick alleged he was suspended by MDC's Board of Directors ("Board") and subsequently terminated by MDC's physician shareholders in retaliation for opposing MDC's "racially discriminatory actions" allegedly taken against Dr. Jayaram Bharadwaj ("Dr. Bharadwaj"), an Indian-American physician. Compl. [Docket No. 1] ¶¶ 23, 34. Dr. Roswick's suspension and termination was prompted by a January 21, 2015 email he sent to 26 shareholder physicians at MDC. In the email, Dr. Roswick expressed concern that the Board did not follow MDC's bylaws when it suspended Dr. Bharadwaj and stated that "[n]o suspension has ever been handled this way with a white American born doctor." Trial Ex. P-278 [Docket No. 250, Attach. 3]. In addition to the Title VII retaliation claim, Dr. Roswick asserted a claim against MDC and its Board members for breach of fiduciary duty under North Dakota law. Compl. ¶¶ 37–41.

MDC denied the allegations in the Complaint and argued Dr. Roswick was suspended and terminated for filing a false complaint of discrimination, not for engaging in protected conduct. MDC contended Dr. Roswick's false allegation was the proverbial last straw in a history of disruptive behavior by Dr. Roswick after his removal as president of the Board in 2012.

On February 13, 2019, the Court granted Defendants' motion for summary judgment on the breach of fiduciary duty claim, and denied MDC's motion for summary judgment on the Title VII claim. See Summ. J. Order [Docket No. 117]. Regarding the Title VII claim, the Court held that whether MDC discharged Dr. Roswick because he engaged in protected conduct, as Dr. Roswick argued, or because MDC believed in good faith that Dr. Roswick made a knowingly false allegation of discrimination, as MDC argued, raised a genuine issue of fact. The Court

explained:

> As the Eighth Circuit has repeatedly recognized, an employer cannot legitimately fire every "employee who files a Title VII claim and is disbelieved," yet on the other hand a plaintiff cannot "file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about [discrimination]." Richey, 540 F.3d at 784 (quoting Gilooly v. Missouri Dep't of Health & Senior Servs., 421 F.3d 734, 740 (8th Cir. 2005)). "Differentiating individual cases between the two extremes . . . is a difficult endeavor at the summary judgment stage." Id. (quoting Gilooly, 421 F.3d at 740). The evidence here raises a genuine issue of fact for a jury as to where in the spectrum this case falls.

Id. at 18.

Dr. Roswick's retaliation claim was tried to a jury beginning August 5, 2019. The trial spanned five days, and concluded with a verdict on August 9, 2019. The twelve person jury considered the testimony of 23 witnesses and 31 exhibits. During trial, MDC moved for a directed verdict at the close of Dr. Roswick's case, and Dr. Roswick moved for judgment as a matter of law after the close of MDC's case. The Court denied both motions. Over Dr. Roswick's objection, the issue of punitive damages was not submitted to the jury because the Court determined that the record lacked sufficient evidence from which a jury could conclude that the standard for awarding punitive damages had been met. The jury verdict found in favor of Dr. Roswick, and awarded $1,211,851.00 in lost wages and benefits through the date of trial. Verdict [Docket No. 222].

MDC now renews its motion for judgment as a matter of law. Alternatively, MDC moves for a new trial or remittitur. Dr. Roswick moves for attorney's fees and costs, front pay, pre- and post-judgment interest, and a partial new trial on the issue of punitive damages.

## III. DISCUSSION

### A.  MDC's Renewed Motion for Judgment as a Matter of Law

MDC renews its motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure.  Rule 50 authorizes the court to allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1–3).  The standard of review for granting a Rule 50(b) motion is whether sufficient evidence exists to support the jury verdict.  "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party."  Allstate Indem. Co. v. Dixon, 932 F.3d 696, 702 (8th Cir. 2019).  In deciding a motion for judgment as a matter of law, the court must:

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.  That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

Washington v. Denney, 900 F.3d 549, 558–59 (8th Cir. 2018) (quoting Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir. 1996)).

To prevail on his Title VII retaliation claim at trial, Dr. Roswick was required to show (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to Dr. Roswick's protected conduct.  Wright v. St. Vincent Health Sys., 730 F.3d 732, 737 (8th Cir. 2013).

MDC argues that the evidence at trial failed to demonstrate that Dr. Roswick engaged in protected conduct or that the protected conduct was the cause of Dr. Roswick's suspension and

termination.

## 1. Protected Conduct

An employee engages in protected conduct under Title VII if the employee opposes an employment practice and acts with a good faith, objectively reasonable belief that the opposed practices are unlawful. Bonn v. City of Omaha, 623 F.3d 587, 591 (8th Cir. 2010).

MDC argues Dr. Roswick admitted he did not engage in protected conduct because he believed only that the Board's actions toward Dr. Bharadwaj could be *interpreted* as discriminatory, not that the Board's actions actually *were* discriminatory. However, Dr. Roswick testified that he sent the January 2015 email for both reasons: he believed discrimination was occurring, and he also wanted to protect the clinic from liability because the Board's actions could be perceived as discriminatory.[1] Additionally, the jury could have reasonably found Dr. Roswick was asserting and opposing discrimination in his January 15, 2015 email, because the Board itself stated in a letter to Dr. Roswick that the Board "determined . . . [Dr. Roswick] actually was asserting discrimination and racism." Trial Ex. P-327 [Docket No. 250, Attach. 8].

MDC also argues the evidence shows Dr. Roswick did not engage in protected conduct because he did not have a good faith, objectively reasonable belief that MDC discriminated against Dr. Bharadwaj. To support this argument, MDC relies on the following evidence: Dr. Roswick declined to meet with MDC's legal counsel to inform her of the facts supporting his discrimination claim; Dr. Roswick sent MDC a letter stating that he was merely suggesting the

---

[1] Although no transcript was ordered in this case, the Court's recollection of Dr. Roswick's testimony is consistent with the unofficial trial transcript for these proceedings.

Board's actions in suspending Dr. Bharadwaj could be interpreted as discriminatory; Dr. Roswick admitted that physicians frequently have an alternative version of events after being disciplined than what actually occurred and that he was not privy to the circumstances surrounding Dr. Bharadwaj's suspension beyond what he had been told by Dr. Bharadwaj; and Dr. Roswick referred to the widespread dissemination of his January 15 email as an "OOOOpsie," which MDC argues is not consistent with the actions of an individual submitting a complaint of race discrimination in good faith. MDC contends this evidence shows Dr. Roswick did not and could not have submitted a good faith complaint of discrimination, as he did not have a reasonable basis of information to make such a claim.

Each of these arguments was presented to and rejected by the jury. The evidence, when construed in the light most favorable to Dr. Roswick, was sufficient for a reasonable person to conclude that Dr. Roswick's complaint was reasonable and made in good faith. Although Dr. Roswick admitted he was not privy to the reasons for Dr. Bharadwaj's suspension, Dr. Roswick testified that he believed MDC was discriminating against Dr. Bharadwaj by failing to provide him the same due process that MDC previously afforded its physician shareholders. Dr. Roswick further testified that he thought the information told to him by Dr. Bharadwaj—that Dr. Bharadwaj had been suspended and instructed by MDC's CEO to resign prior to a shareholder vote—was true because the information was corroborated by: 1) an email from MDC's medical director to MDC shareholders saying Dr. Bharadwaj was on leave; and 2) a patient telling Dr. Roswick that the patient learned from the clinic that Dr. Bharadwaj would not be returning. Thus, a reasonable jury could conclude from the trial evidence that Dr. Roswick engaged in protected activity.

## 2. MDC's Good Faith Belief Dr. Roswick Engaged in Misconduct

MDC also argues it is entitled to judgment as a matter of law because Dr. Roswick's termination was based on a good faith belief by MDC that Dr. Roswick engaged in misconduct, not because of protected activity. MDC contends there was no evidence at trial rebutting that MDC reasonably believed Dr. Roswick engaged in misconduct when he asserted that the Board was discriminating against Dr. Bharadwaj. None of the shareholders who testified at trial and voted to terminate Dr. Roswick believed that his complaint was made in good faith. The shareholders were privy to the actual circumstances of Dr. Bharadwaj's suspension. The shareholders also knew of the disruptive behavior by Dr. Roswick that occurred months before he complained of discrimination. After sending the email, Dr. Roswick attempted to minimize it instead of standing by it, thereby signaling to the Board and shareholders that the alleged complaint was not made in good faith and supported by facts.

Again, these arguments were presented to and rejected by the jury. When all reasonable inferences are construed in Dr. Roswick's favor, the evidence supports a reasonable conclusion that Dr. Roswick was terminated because he engaged in protected activity, not because MDC reasonably believed he filed a false claim of discrimination. The Board's letters informing Dr. Roswick of the reason for his suspension and termination did not state his discrimination claim was knowingly false. Witnesses testified there was no discussion of false statements at the shareholder meeting where Dr. Roswick was terminated. Thus, reasonable persons could differ over whether Dr. Roswick's termination was based on a good faith belief by MDC that he filed a false claim of discrimination.

Accordingly, MDC's renewed motion for judgment as a matter of law is denied.

**B.  MDC's Motion for New Trial or Remittitur**

   **1.  New Trial**

MDC contends it is entitled to a new trial, arguing the verdict is against the weight of the evidence, the Court erroneously excluded evidence, and Jury Instruction 18 was fatally defective.       The decision whether to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court.  Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995).  "A new trial is required only when necessary to avoid a miscarriage of justice."  Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1995) (citing McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994)).  "[T]he court is not free to set aside a jury verdict and to grant a new trial merely because it believes the jury could have drawn different inferences or that another result would be more reasonable."  Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1409 (8th Cir. 1987).  Additionally, inaccuracies or errors should not serve as a basis for setting aside a verdict unless prejudicial error is shown.  Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 148 (8th Cir. 1997).

      **a.  Weight of the Evidence**

A trial court may only grant a new trial if it believes "that the verdict was so contrary to the evidence as to amount to a miscarriage of justice."  Butler v. French, 83 F.3d 942, 944 (8th Cir. 1996).  "In determining whether a verdict is against the weight of the evidence, the trial court can . . . weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."  White v. Pence, 961 F.2d 776, 780 (8th Cir.1992) (quotation marks omitted).  However, "a trial court may not grant a new trial simply because the trial court would have found a verdict different from the one the jury found."  Butler, 83 F.3d at

944.  Rather, "[t]he court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred."  Ryan v. McDonough Power Equip., Inc., 734 F.2d 385, 387 (8th Cir.1984).

Based on the evidence at trial, the Court is not left with a firm conviction that the jury has erred or the verdict is a miscarriage of justice.

### b.  Evidentiary Rulings

Prior to trial, MDC filed a motion in limine asking the Court to exclude testimony by Dr. Roswick and by non-decisionmakers at MDC regarding Dr. Roswick's job performance.  Dr. Roswick opposed the motion, arguing the evidence was necessary to rebut MDC's argument that Dr. Roswick had engaged in disruptive behavior months before sending the January 2015 email.  Dr. Roswick argued he was wrongly reprimanded in October 2014 for disruptive behavior based on six incidents that were not true, and that evidence of his job performance was necessary to show that at the time MDC's shareholders voted to terminate him they knew the incidents were false.  In reply, MDC argued:

> The propriety of any discipline of Plaintiff prior to his suspension is simply irrelevant to whether he was retaliated against for a claim of discrimination.  Again, this is a retaliation action for a claim of discrimination, not a wrongful termination action by Plaintiff for an untruthful disciplinary action.  Thus, exclusion of Plaintiff's testimony and other non-decisionmakers regarding Plaintiff's job performance is necessary to prevent the jury from being confused as to the relevant issues to be decided.

Def.'s Reply Mem. [Docket No. 127] at 2.

The Court found MDC's reasoning persuasive and preliminarily ruled in a Pretrial Order that "[t]he only relevance of the six incidents is to show that the Board perceived Dr. Roswick's

behavior as disruptive.  Therefore, evidence of the facts and circumstances underlying the pre-October 2014 incidents is inadmissible.  Evidence underlying the pre-October 2014 incidents also threatens to confuse the jury and cause undue delay by creating mini-trials on irrelevant issues."  Pretrial Order [Docket No. 205] at 3.  The Pretrial Order stated the parties would have "an opportunity for preserving objections to these rulings . . . on the first day of trial."  Id. at 2.

On the first morning of trial, Dr. Roswick objected to this evidentiary ruling but MDC did not.[2]  MDC accepted the ruling and noted that the six incidents involved matters of peer review and threatened to create six mini-trials within the case.  MDC then proposed that the Board's October 2014 letter of reprimand be submitted to the jury with the specifics of the six incidents redacted.  The Court approved MDC's proposal, and the redacted October 2014 letter was received into evidence at trial.  See Trial Ex. D-43 [Docket No. 250, Attach. 10].  The unredacted portions of the letter, which the jury was allowed to view, stated that Dr. Roswick's actions over the past several months had been disruptive, that the Board expected him to cease his disruptive behavior going forward and "utilize proper avenues to express [his] concerns," and that "[i]f the disruptive behaviors do not cease the Board may take disciplinary action which could result in employment termination."  Id.  Dr. Roswick's signature acknowledging receipt of the letter was not redacted.  Id.

MDC now argues the Court erred by excluding evidence of the specific facts and circumstances underlying the six pre-October 2014 incidents.  MDC contends the Court excluded the evidence *sua sponte*, and that if the jury had heard evidence about the

---

[2] The Court's memory, confirmed by review of the unofficial transcript, is that MDC waived any objection to the Court's ruling to exclude the six incidents.

circumstances of the prior discipline the jury would have understood the disruptive pattern of Dr. Roswick's behavior and the continuance of that pattern in January 2015 when Dr. Roswick sent the email complaining of discrimination.

A district court possesses wide discretion in admitting and excluding evidence. Harris v. Chand, 506 F.3d 1135, 1139 (8th Cir. 2007). The Eighth Circuit "will not set aside a jury verdict unless the district court clearly and prejudicially abused its discretion in determining whether or not to admit evidence." Shaw Grp., Inc. v. Marcum, 516 F.3d 1061, 1068 (8th Cir. 2008). To warrant a new trial, an evidentiary error must have been so prejudicial that a new trial, absent the error, would be likely to produce a different result. Pointer v. DART, 417 F.3d 819, 822 (8th Cir. 2005); Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008).

Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the probative value of the specific incidents of previous disruptive behavior by Dr. Roswick was not particularly heavy given that the jury was already aware from the October 2014 letter that: 1) the Board had determined Dr. Roswick's pre-October 2014 behavior to have been disruptive for a period of several months; 2) Dr. Roswick was told to stop the disruptive behavior and utilize proper channels to express his concerns; and 3) Dr. Roswick was warned that future disruptive behavior could result in termination.

Additionally, if MDC were permitted to open the evidentiary door to allow testimony of those incidents, fair rebuttal would allow Dr. Roswick to challenge the merits of the incidents and the propriety of his past discipline. Under these circumstances, the probative value of the

incidents was substantially outweighed by the danger of confusing the issues, misleading the jury, and causing undue delay by creating mini-trials about Dr. Roswick's past discipline.

MDC also argues that a question from the jury to the Court during deliberations shows that excluding the specific circumstances of Dr. Roswick's 2014 disruptive behavior caused the jury to be confused. The jury asked: "Can the jury consider the fact that Dr. Roswick had prior disciplinary issues/actions? The jury understands we cannot know the specifics." Minute Entry [Docket No. 216, Attach. 1]. The Court answered: "Yes, if you find that fact is in evidence in this case." Id. The jury's question does not demonstrate confusion over Dr. Roswick's prior discipline. To the contrary, the question shows the jury's awareness that Dr. Roswick had been disciplined for disruptive behavior in the recent past. The Court did not clearly and prejudicially abuse its discretion by excluding evidence of the specific 2014 incidents or in responding to the jury's question.

### c. Jury Instructions

MDC argues Jury Instruction 18 failed to clearly and adequately instruct the jury on the role of MDC's good faith belief regarding Dr. Roswick's complaint of race discrimination.

Trial courts have broad discretion in formulating jury instructions. B & B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012 (8th Cir. 2001). "[J]ury instructions do not need to be technically perfect or even a model of clarity." Id. The question is "whether the instructions, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury." Id.

Before trial, MDC requested the Court to modify the Eighth Circuit pattern jury instruction for retaliation to add the following additional element: "[T]he defendant reasonably

believed plaintiff made a good faith complaint of race discrimination." Def.'s Proposed Jury Instrs. [Docket No. 140] at 5. MDC argued this additional element was necessary to make clear that if MDC believed in good faith that Dr. Roswick made a false claim of discrimination, Dr. Roswick cannot recover on his claim of retaliation.

The Court declined to alter the pattern instruction and instead included an explanatory instruction on the causation element. This explanatory instruction, Jury Instruction 18, states:

> To prove the fourth element, plaintiff Dr. Roswick must prove the defendant Mid Dakota Clinic suspended and terminated him because he opposed discrimination, and not because the defendant believed in good faith that the plaintiff made a false claim of discrimination.
>
> "But-for" does not require that the plaintiff's complaint of discrimination was the only reason for the actions taken by the defendant. You may find the defendant would not have terminated the plaintiff "but-for" his complaint of discrimination if it has been proved that the defendant's stated reasons for terminating him are not the real reasons, but are pretext to hide retaliation.
>
> If an employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected activity.

Final Jury Instrs. [Docket No. 217].

MDC argues the first two paragraphs, when read together, were confusing because they included double negatives, legal jargon, and compound sentences. MDC contends the jury's question about whether it could consider Dr. Roswick's prior discipline issues shows the jury was confused about the issue of MDC's reasonable belief.

The instruction fairly and adequately informed the jury of the issues and the law. The first paragraph identified the causation issue raised by the parties' evidence and arguments. The second paragraph was taken verbatim from the Eighth Circuit's model jury instruction on

causation. The third paragraph, which MDC does not address in its argument, uses language from the Eighth Circuit's decision in Richey v. City of Independence to instruct the jury on the role of an employer's good faith belief. 540 F.3d 779, 784 (8th Cir. 2008) ("If [an] employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity."). The jury instruction as a whole adequately and correctly instructed the jury on the role of an employer's good faith belief.

The jury's question and the Court's answer during deliberations do not demonstrate jury confusion. To the contrary, the question and answer show the jury recognized the role of an employer's good faith belief and was aware that evidence of Dr. Roswick's past discipline could be considered in evaluating whether MDC acted because of perceived misconduct.

### 2. Remittitur

The jury awarded Roswick $1,211,851 in lost earnings through the date of the verdict. MDC moves for remittitur, arguing the jury awarded more than double the amount of damages testified to by MDC's CFO, Craig Schaaf ("Schaaf").

A district court can order remittitur "only when the verdict is so grossly excessive as to shock the conscience of the court. A verdict is not considered excessive unless there is plain injustice or a monstrous or shocking result." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (internal citations and quotations omitted). Remittitur cannot be ordered "merely because [the court] may have arrived at a different amount from the jury's award." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 553 (8th Cir. 2013). Whether a verdict is excessive lies within the discretion of the trial court. Jenkins v. McLean Hotels, Inc., 859 F.2d

14

598, 600 (8th Cir. 1988).

At trial, both parties' experts calculated Dr. Roswick's back pay damages by estimating the income Dr. Roswick would have earned at MDC from 2015 through August 2019, and subtracting from this amount the income Dr. Roswick earned during this time period from his current employer, Sanford Health ("Sanford"). See Trial Ex. P-489 [Docket No. 249, Attach. 3] at 002; Trial Ex. D-76 [Docket No. 249, Attach. 9]. Dr. Roswick's expert, Dr. David Jones ("Dr. Jones"), estimated total losses of $1,595,705. Trial Ex. P-489 at 002. MDC's expert, Schaaf, estimated total losses of $600,168. Trial Ex. D-76.

The difference in the damage calculations is largely attributable to the experts' projections for the amount Dr. Roswick would have earned had he continued working at MDC from April 2015 until August 2019. See Trial Ex. P-491 [Docket No. 249, Attach. 4] at 5. Dr. Jones' projections were based on Dr. Roswick's average annual earnings at MDC from 2011 through 2014. MDC argues these projections were inflated because Dr. Roswick's 2011-2014 earnings included medical director income, board member income, and urgent care income that Dr. Roswick would no longer have earned in 2015 and beyond.

Schaaf's projections of Dr. Roswick's MDC earnings from April 2015 to August 2019 were based on assumptions about what Dr. Roswick's productivity would have been during this time period. Dr. Roswick's salary was determined by his productivity, because he was compensated for every Relative Value Unit ("RVU") he generated. See Trial Ex. D-69 [Docket No. 249, Attach. 6] at MDC 4029, 4031. At the time Dr. Roswick was terminated he had consistently been working one day per week in MDC's urgent care department. Although urgent care accounted for only 20% of Dr. Roswick's time, it comprised 35% of his productivity

because a physician can typically garner more RVUs when working in urgent care than in family practice.  See id. at MDC 4029, 4031.

In estimating Dr. Roswick's MDC earnings from 2015 through the verdict, Schaaf performed two alternative calculations.  One calculation assumed Dr. Roswick's productivity in family practice and in urgent care would not have changed from previous years.  See generally Trial Ex. D-69.  The other calculation assumed Dr. Roswick's productivity in urgent care would have been eliminated entirely and his productivity in family practice would have remained the same.  Id. at MDC 4028; Trial Ex. D-76.  The "with urgent care" calculation resulted in back pay damages of over $1.2 million.[3]  The "without urgent care" calculation resulted in back pay damages of approximately $600,000.  Trial Ex. D-76.  At trial, Schaaf testified that the "without urgent care" calculation was the proper damages estimate because MDC hired additional urgent care physicians in 2015, thereby substantially reducing the number of urgent care shifts Dr. Roswick would have been able to work had he stayed at MDC.  Trial Ex. D-69 at MDC 4029, 4030.

The jury's damage award of approximately $1.2 million obviously falls between Dr. Jones' damage estimate of  $1,595,705 and Schaaf's damage estimate of $600,168.  MDC argues Schaaf's $600,168 projection is the only damages calculation supported by undisputed facts. The Court disagrees.  Schaaf conceded on cross examination that family practice physicians at MDC still work some urgent care shifts.  Schaaf also testified that MDC's family practice

---

[3] The roughly $1.2 million total is calculated by subtracting Dr. Roswick's Sanford earnings from his projected MDC earnings "with urgent care" for 2015 to August 2019.  See Trial Ex. D-69 at MDC 4029 (projected MDC earnings with urgent care), MDC 4037 (Sanford earnings).

physicians who had been working one day per week in urgent care are now filling that day by working in the family practice clinic. On this record, the jury could have reasonably concluded that Schaaf's damage estimate was too low because the estimate assumed Dr. Roswick would not have any productivity on the one day per week he had previously spent working in urgent care. The jury's damage award reflects that the jury likely concluded that Dr. Roswick would have filled his one unscheduled day per week by seeing additional family practice patients and working some urgent care shifts, just as other MDC family physicians did. The jury's damage award of $1,211,851 is not plainly unjust or shocking.

Based on the above, MDC's motion for a new trial or remittitur is denied.

## C. Dr. Roswick's Motion to Amend Judgment to Award Equitable Relief

Dr. Roswick argues that in addition to the back pay awarded by the jury, he is entitled to an award of $1,589,722 in front pay to make him whole for lost earnings into the future.

"Front pay is an equitable remedy, which the district court in its discretion may award under the [civil rights statutes] to make the injured party whole." Newhouse v. McCormick & Co., 110 F.3d 635, 641 (8th Cir. 1997); see also 42 U.S.C. § 2000e-5(g)(1) (authorizing equitable relief). Front pay may be awarded instead of reinstatement in circumstances where reinstatement is not practical or possible, such as when there are "no comparable positions available" or if "there is such hostility between the parties that a productive and amicable working relationship would be impossible." Olivares v. Brentwood Indus., 822 F.3d 426, 429–30 (8th Cir. 2016).

The parties agree reinstatement is not practical here. Schaaf testified at trial that Dr. Roswick's position at MDC has been filled. Additionally, several witnesses testified to the

substantial hostility between Dr. Roswick and MDC.  Because reinstatement is not practical, the Court will determine the amount of front pay to which Dr. Roswick is entitled.

"Awards of front pay are always at least partially speculative as they necessarily rest upon predictions and assumptions about a plaintiff's longevity, the likely duration of any future employment, the continued viability of the employer, ongoing efforts at mitigation, and countless other factors."  Dollar v. Smithway Motor Xpress, Inc., 710 F.3d 798, 809 (8th Cir. 2013).  The plaintiff bears the initial burden of proving a basis for a front pay award, and the burden then shifts to the defendant to disprove the plaintiff's prima facie case.  Olivares, 822 F.3d at 430; Curtis v. Elecs. & Space Corp., 113 F.3d 1498, 1503–04 (8th Cir. 1997).

MDC raises three arguments for why Dr. Roswick is not entitled to front pay.  First, MDC contends the jury's back pay award is excessive and has already made Dr. Roswick whole.  For the reasons discussed above, the jury's damage award was not excessive.  Second, MDC argues Dr. Roswick is not entitled to front pay because he found comparable employment at Sanford.  However, Dr. Roswick's financial compensation at Sanford is not comparable to what he would be earning at MDC.  The compensation rate for MDC's physicians are in the 90th percentile of physicians nationally, as compared to the 50th percentile for Sanford's physicians.  See Trial Ex. P-463 [Docket No. 249, Attach. 2] at 1.  Third, MDC contends Dr. Roswick would not have stayed at MDC after 2019 because his disruptive behavior and animosity toward the Board made it likely he would have been terminated or resigned had he not been terminated for complaining of discrimination.  This argument is rejected because Dr. Roswick had been a physician at MDC for 14 years and was a shareholder at the clinic, making it unlikely he would have voluntarily resigned.  Additionally, although substantial animosity existed between Dr.

18

Roswick and the Board for a period of time before he was terminated, it is uncertain whether the relationship might have stabilized. Guessing that he would have been terminated later for other reasons is a stretch beyond "partial[] speculati[on]." Dollar, 710 F.3d at 809. Thus, an award of front pay is appropriate.

Dr. Roswick, who turns 63 in January 2020, argues he is entitled to front pay for lost earnings through age 69. MDC argues that awarding Dr. Roswick front pay after age 65 would be improperly speculative. The Court agrees. Dr. Roswick's quarterly retirement account statements show he is invested in the "Sanford Target Retirement 2020" plan, meaning the investments are targeted toward a 2020 retirement date, when Dr. Roswick will be 63. See Wall Aff. [Docket No. 263] Ex. A at 00591, 00593, 00595. At trial, Dr. Roswick testified he does not have plans to retire and has not discussed retirement with anyone. However, he did not affirmatively testify that he intends to continue working until at least age 69. Although Dr. Roswick testified his brother and father both worked past age 70, he stopped short of testifying that he plans to do the same. He also testified that he enjoys his job, but did not state that he plans to do it for seven more years. Dr. Roswick's experts and Schaaf provided only generalized estimates about the age at which a family practitioner or a person with Dr. Roswick's education level can be expected to retire. Given that Dr. Roswick has not provided any estimate of how long he will continue working, it would be overly speculative for this Court to assume he will work through age 69. The court will adopt for its calculations the common standard of retirement at age 65.

MDC also argues that if front pay is awarded, Dr. Roswick is entitled to a maximum of $170,372. This amount represents Schaaf's projections for what Dr. Roswick would have earned

from the date of trial until age 65 had he not worked any urgent care shifts and not filled any of the time he formerly spent working in urgent care by adding family practice patients. This projection is unrealistically low because, as discussed above, Schaaf testified that MDC's family practice physicians who previously worked regular urgent care shifts made up for some of this lost productivity by seeing more family practice patients and working occasional shifts in urgent care. It is reasonable to assume that the staffing changes in MDC's urgent care may have impacted Dr. Roswick's productivity to some degree, but not to the degree assumed by Schaaf. The Court finds a reasonable estimate of Dr. Roswick's future earnings would be roughly 90% of Schaaf's "with urgent care" income projections for 2019 through 2021. See Trial Ex. D-69 at MDC 4030 (projected MDC earnings with urgent care income). After subtracting Dr. Roswick's projected Sanford income for this period, the Court estimates Dr. Roswick's losses from the date of the verdict through December 31, 2021 equal approximately $430,000. See id. at 4037 (projected Sanford earnings).

MDC further argues Dr. Roswick's front pay must be reduced because Dr. Roswick has failed to mitigate his damages. MDC contends Dr. Roswick works only as a family practitioner at Sanford and has not attempted to supplement his income by working in urgent care, even though his Sanford clinic location provides urgent care. This argument fails because Dr. Roswick testified that he inquired about working at Sanford's walk-in clinic and was told that to work shifts in the urgent care department he would need to join the department.

The Court awards Dr. Roswick front pay of $430,000 to make him whole for lost future earnings without providing him with a windfall.

**D. Dr. Roswick's Motion to Alter Judgment to Award Interest**

Dr. Roswick seeks an award of both prejudgment and postjudgment interest. MDC argues Dr. Roswick is not entitled to prejudgment interest. Alternatively, MDC argues that if the Court does award prejudgment interest, the award should be calculated using the federal postjudgment interest rate rather than the prime interest rate requested by Dr. Roswick. MDC does not oppose Dr. Roswick's request for postjudgment interest.

**1. Prejudgment Interest**

Title VII allows a prevailing plaintiff to recover prejudgment interest on backpay awards. Loeffler v. Frank, 486 U.S. 549, 557–58 (1988). "Prejudgment interest serves at least two purposes: ( 1) it helps compensate plaintiffs for the true cost of money damages they have incurred, and (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation." Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc., 664 F.2d 672, 674 (8th Cir. 1981). The grant or denial of prejudgment interest is within the district court's discretion. Washington v. Kroger Co., 671 F.2d 1072, 1078 (8th Cir. 1982). "Generally, prejudgment interest should be awarded 'unless exceptional or unusual circumstances exist making the award of interest inequitable.'" Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1194 (8th Cir. 2000) (quoting Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.1986)).

MDC argues prejudgment interest should not be awarded because the delay in determining liability was not the fault of MDC. MDC notes that Dr. Roswick waited almost two years after he was terminated before filing this lawsuit, and MDC did not seek an extension of trial or any other date that would have unnecessarily protracted the proceedings. What delay

occurred in this case did not extend beyond the typical delays inherent in litigation, and thus were not exceptional or unusual. MDC also argues awarding prejudgment interest is inequitable because the damages awarded by the jury more than compensate Dr. Roswick for his alleged losses. The jury's damage award was less than Dr. Roswick's expert suggested and was supported by the evidence. Because no unusual or exceptional circumstances exist, equity supports awarding Dr. Roswick prejudgment interest to compensate him for the true cost of damages he incurred.

The parties disagree over the proper rate of prejudgment interest. Dr. Roswick argues that courts typically use one of three rates—the federal postjudgment rate under 28 U.S.C. § 1961 (1.77%), the prime rate (5.25%), or the state statutory rate (8.5% for North Dakota). Dr. Roswick contends the Court should use the prime rate here because it is an equitable rate and represents the middle ground among the three alternatives. MDC disagrees, arguing the federal postjudgment rate applies.

The Eighth Circuit has "concluded that 28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1331 (8th Cir. 1995). Thus, prejudgment interest will be calculated using the federal postjudgment interest rate, which the parties agree is 1.77%. The parties agree that prejudgment interest attaches from April 15, 2015 (the date Dr. Roswick was terminated) to the entry of judgment on August 20, 2019, and compounds annually. The Court therefore awards Dr. Roswick prejudgment interest of $96,108.90.[4]

---

[4] This total was calculated as follows:

## 2. Postjudgment Interest

Dr. Roswick asks the Court to amend the Judgment to award postjudgment interest pursuant to 28 U.S.C. § 1961. This statute allows for interest "on any money judgment in a civil case recovered in a district court," and specifies that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Additionally, "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b).

Dr. Roswick argues the weekly average 1-year constant maturity yield for the calender week proceeding the date of the judgment is 1.77%. MDC states that it has reviewed Dr. Roswick's calculation of the postjudgment interest rate and does not object to the rate of 1.77%.

| Year | Principal | Interest (Principal x .0177) | Principal Plus Interest |
|------|-----------|------------------------------|-------------------------|
| Apr. 15, 2015 to Apr. 14, 2016 | $1,211,851.00 | $21,449.76 | $1,233,300.76 |
| Apr. 15, 2016 to Apr. 14, 2017 | $1,233,300.76 | $21,829.42 | $1,255,130.18 |
| Apr. 15, 2017 to Apr. 14, 2018 | $1,255,130.18 | $22,215.80 | $1,277,345.98 |
| Apr. 15, 2018 to Apr. 14, 2019 | $1,277,345.98 | $22,609.02 | $1,299,955.00 |
| Apr. 15, 2019 to Aug. 20, 2019 | $1,299,955.00 | $8,004.90 ($23,009.20 x .3479 partial year) | $1,307,959.90 |
| | **TOTAL INTEREST** | **$96,108.90** | |

Thus, Dr. Roswick is awarded postjudgment interest at the rate of 1.77%, to accrue from the date

of the Judgment (August 20, 2019) through the date of payment, and to compound annually.

**E. Dr. Roswick's Motion for Partial New Trial on Punitive Damages**

The Court did not submit the issue of punitive damages to the jury because it determined

the evidence adduced at trial was not sufficient for a jury to conclude MDC acted with malice or

reckless indifference to Dr. Roswick's federally protected rights. Dr. Roswick argues the issue

of punitive damages should have presented to the jury and that he is entitled to a partial new trial

on punitive damages.

"Federal law imposes a formidable burden on plaintiffs who seek punitive damages in

employment discrimination cases." <u>Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.</u>, 439 F.3d

894, 903 (8th Cir. 2006). Punitive damages are not appropriate under Title VII unless "the

employer not only engages in intentional discrimination but also does so with 'malice or with

reckless indifference to the [employee's] federally protected rights.'" <u>Bennett</u>, 721 F.3d at 553

(quoting 42 U.S.C. § 1981a(b)(1)). As the Supreme Court has explained, "Congress plainly

sought to impose two standards of liability–one for establishing a right to compensatory damages

and another, higher standard that a plaintiff must satisfy to qualify for a punitive award."

<u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 534 (1999). "When an employer promptly and

conscientiously responds to complaints of harassment or discrimination with good faith efforts,

punitive damages are not warranted." <u>Dominic v. DeVilbiss Air Power Co.</u>, 493 F.3d 968, 974

(8th Cir. 2007).

Dr. Roswick argues that the trial evidence shows MDC knew it risked flaunting Title VII

by performing a sham investigation into Dr. Roswick's discrimination claim. The Court

disagrees.  After Dr. Roswick asserted that MDC was discriminating against a third party, MDC

promptly provided him with the opportunity to meet with its legal counsel to allow Dr. Roswick

to explain the basis for his complaint.  Dr. Roswick declined to do so.  MDC's termination of the

investigation after the only complainant, Dr. Roswick, declined to participate is not evidence that

MDC acted with reckless indifference to Dr. Roswick's protected rights.  The trial evidence and

circumstances of this case fall far short of the standard for punitive damages.  Dr. Roswick's

motion for a partial new trial on this issue is denied.

**F.  Dr. Roswick's Motion for Attorney Fees and Costs**

**1.  Attorney Fees**

Dr. Roswick seeks an attorney fee award of $440,898.50.  This amount reflects 807.3

hours billed by Dr. Roswick's Minnesota attorneys using their standard Minneapolis rates, for a

total of $383,390, plus a 15% fee enhancement.

**a.  Legal Standard**

In a Title VII action, "the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee (including expert fees)."  42 U.S.C. § 2000e-5(k).  The United States

Supreme Court has outlined several factors a trial court may weigh when determining whether a

request for attorney's fees is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill required to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance
> of the case; (5) the customary fee; (6) whether the fee is fixed or
> contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation and the ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983) (citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).  The court reviewing the fee request need not explicitly consider every factor.  Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999).

The district court is afforded broad discretion in determining the reasonableness of an attorney fee award "because it has the greatest exposure to, and therefore understanding of, the proceedings before it."  Shrader v. OMC Aluminum Boat Grp., Inc., 128 F.3d 1218, 1220 (8th Cir. 1997).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley, 461 U.S. at 437.

### b.  Lodestar Calculation

The starting point for determining reasonable attorney fees is the "lodestar" calculation, which multiplies the number or hours reasonably expended on the litigation by a reasonable hourly rate.  Id. at 433; Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002).

### i.  Hourly Rate

MDC argues the Minneapolis rates charged—$550 per hour for a partner and $300 per hour for an associate—are unreasonable because North Dakota attorneys regularly represent plaintiffs in employment cases.  The hourly rates for attorneys in North Dakota are typically $200–$300 for an associate and $300–$425 for a partner.

To determine whether an hourly rate is reasonable, the Court looks to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  The court may also rely on its own experience and knowledge of prevailing market rates.  Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005).  "In a case where the plaintiff does not use local counsel, the court

is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001). On the other hand, if a field of law is "not so recondite to be beyond the ken of local counsel," local rates should apply. Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 141 (8th Cir. 1982) (applying local hourly rates for out-of-town counsel where there was "no doubt that plaintiff could have found adequate counsel closer to the situs of the case for substantially less" than counsel's out-of-town rate).

The Court is confident that many North Dakota attorneys would have been able and willing to take this case had Dr. Roswick desired to locate one.[5] The facts and law in this Title VII retaliation case are not novel or complex, and MDC has identified over a dozen North Dakota attorneys who handle employment cases for plaintiffs. Because Dr. Roswick could have found competent counsel within the state, North Dakota rates are appropriate.[6] In North Dakota, "hourly rates for associates in the $200-$300 range and $300-$425 range for partners are not unusual or unreasonable." N. Dakota Farm Bureau, Inc. v. Stenehjem, No. 16-cv-137, 2019 WL 4045643, at *5 (D.N.D. Aug. 27, 2019). The Court will apply an hourly rate of $425 for the partner and $250 for the associate who represented Dr. Roswick in this matter.

---

[5] Dr. Roswick's efforts to find local counsel were limited to performing an online search and asking for referrals from his then attorney and "lawyer friends" in North Dakota, who recommended attorneys in Florida and Minneapolis. Roswick Decl. [Docket No. 239] ¶¶ 3–5, 7.

[6] The Court recognizes that Dr. Roswick had the right to retain counsel of his choice and that his attorneys performed skillfully in this case. "But [the Court's] task is to fix a reasonable fee and, in doing so, be mindful of Congress's purpose to encourage the enforcement of [civil] rights by awarding fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." Avalon, 689 F.2d at 141 (quotation marks omitted).

## ii.  Hours Reasonably Expended

In calculating a reasonable fee amount, courts should exclude hours that were not "reasonably expended," such as excessive or redundant hours or instances where overstaffing or poor billing judgment has occurred.  Hensley, 461 U.S. at 434.

MDC argues the Court should exclude hours spent by Dr. Roswick's counsel to depose witnesses that were excluded at trial, and to pursue discovery disputes over information that was excluded at trial.  After reviewing the billing records, the Court finds the hours spent deposing witnesses and pursing discovery were reasonable.

MDC also contends Dr. Roswick's attorneys unreasonably billed for time spent on a focus group and mock trial, and for time spent consulting with various attorneys about trials in North Dakota, trials with Judge Montgomery, and trials against MDC's counsel.  When determining whether fees incurred for focus groups or mock trials are reasonable, courts focus on the purpose of these activities.  Such fees have been held to be reasonably incurred if the activities were conducted to prepare a client or witness for trial.  See Lewis v. Heartland Inns of Am., L.L.C., 764 F. Supp. 2d 1037, 1049 (S.D. Ia. 2011).  However, these fees have been disallowed where the activities were undertaken to improve the attorneys' preparation and presentation.  See Denesha v. Farmers Ins. Exchange, 976 F. Supp. 1276, 1291 (W.D. Mo. 1997) (denying fees because "[w]hile plaintiff's counsel may believe that the mock trial enhanced their preparation and enabled them to make a more effective representation, the case could certainly have been tried without this type of pretrial preparation").  Here, Dr. Roswick contends the focus group and mock trial were conducted so counsel could familiarize themselves with juror attitudes and opinions in North Dakota.  Although these advisory sessions likely focused

counsel's presentation at trial, the case could have been effectively tried without using these techniques of trial preparation.  See id. The Court will exclude hours related to the focus group, mock trial, and attorney consultations as follows:  23.3 partner hours from billing entries on 4/9/19, 4/10/19, 4/25/19, 4/29/19, 5/15/19, 5/20/19, 6/3/19, 6/25/19, 7/15/19, and 7/18/19; and 7.1 associate hours from billing entries on 5/20/19 and 7/19/19.

Based on the above, the lodestar calculation is $288,987.50.  This figure reflects 541.5 partner hours billed at $425 per hour, plus 235.4 associate hours billed at $250 per hour.

### c.  Enhancement to Lodestar

Dr. Roswick asks the Court to enhance the lodestar by 15% based on the results obtained, the risks inherent in litigating a contingency fee case for 2 ½ years, and the fee amounts routinely awarded in similar cases.  "[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). Enhancements to a lodestar are awarded only in "rare and exceptional" circumstances, id., and "may not be awarded based on a factor that is subsumed in the lodestar calculation."  Id. at 553. This case does not present rare and exceptional circumstances sufficient to overcome the strong presumption that the lodestar figure is reasonable.  Therefore, an enhancement is not warranted.

### d.  Downward Adjustment to Lodestar

MDC argues Dr. Roswick's attorney fee request should be reduced by 2% across the board because counsel's timesheets are not properly formatted and include some block billing entries.  The timesheets and block entries are sufficiently clear and do not warrant a reduction.

MDC also contends a reduction from counsel's lodestar is appropriate based on Dr. Roswick's partial success in this case in comparison to the relief requested. MDC argues Dr. Roswick only partially succeeded because his breach of fiduciary duty claim was rejected by summary judgment, the individual defendants were dismissed, he was denied punitive damages, and he withdrew his emotional distress claim at trial. This argument lacks merit because "rejection of one theory 'is not a sufficient reason for reducing a fee. The result is what matters.'" Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir. 2008) (quoting Hensley, 461 U.S. at 435). Dr. Roswick achieved substantial success on his central claim for retaliation discrimination. Accordingly, the Court awards the lodestar of $288,987.50 in attorney's fees.

### 2. Costs

Dr. Roswick requests costs of $91,530.38. MDC argues Dr. Roswick's requested costs should be reduced by 2% for failure to comply with Local Rule 54.1, which requires a motion for costs to be "accompanied by a verified statement of costs that contains, for each category of costs being claimed, a detailed breakdown of each item of claimed costs within the category." L.R. 54.1(A)(1). This argument is rejected because Dr. Roswick's request includes a verified statement of costs and is sufficiently detailed for the Court to ascertain their reasonableness.

MDC further argues a 25% decrease should be applied to account for unnecessary discovery disputes, depositions, and motions, and for Dr. Roswick's limited success at trial. This argument fails for the reasons stated above.

MDC also contends the expert fees paid to Dr. Jones ($39,773.20) and to Debra Phairas ($13,556.25) for providing reports and testimony on damages should be reduced to $10,000 and

$5,000 respectively. MDC reasons that the experts' fees are objectively unreasonable based on the complexity of the case and the work necessary to calculate Dr. Roswick's damages. The Court has reviewed the invoices for Dr. Roswick's experts and finds their fees to be reasonable and necessary.

Finally, MDC contends that costs for a mock trial ($8,500) and a focus group ($3,617.23) should not be awarded. For the reasons already discussed, these costs will be disallowed. After subtracting these costs from the total amount requested, the Court awards costs of $79,413.15.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Dr. Robert J. Roswick's Motion for Attorney Fees and Costs [Docket No. 227] is **GRANTED IN PART and DENIED IN PART**. Dr. Roswick shall recover $288,987.50 in attorney's fees and $79,413.15 in costs.

2. Dr. Roswick's Motion to Amend Judgment to Award Equitable Relief [Docket No. 247] is **GRANTED IN PART and DENIED IN PART**. Dr. Roswick shall recover $430,000 in front pay.

3. Dr. Roswick's Motion to Alter Judgment to Award Interest [Docket No. 251] is **GRANTED IN PART and DENIED IN PART.**

   a. Dr. Roswick shall recover $96,108.90 in prejudgment interest on the back pay award.

   b. Pursuant to 28 U.S.C. § 1961, Dr. Roswick is entitled to recover postjudgment interest accruing from August 20, 2019 at the rate of 1.77% computed daily and compounded annually until the date of payment.

4. Dr. Roswick's Motion for Partial New Trial on Punitive Damages [Docket No. 254] is **DENIED**;

5. Defendant Mid Dakota Clinic, P.C.'s Renewed Motion for Judgment as a Matter of Law [Docket No. 244] is **DENIED**; and

6.   Mid Dakota Clinic, P.C.'s  Motion for New Trial, or in the Alternative, Motion for Remittitur [Docket No. 246] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 13, 2019.